**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JURGIS PALIULIS,**

                                        **Petitioner,**

              v.                                              **9:08-CV-1281**
                                                                    **(FJS)**
**SARATOGA COUNTY PROBATION**
**DEPARTMENT, CHERYL GALARNEAU, Saratoga**
**County Probation Officer, and PAUL VISCUSI,**
**Saratoga County Probation Department,**

                                        **Respondents.**

_____

**APPEARANCES**                              **OF COUNSEL**

**OFFICE OF THERESA M. SUOZZI**          **THERESA M. SUOZZI, ESQ.**
480 Broadway
Suite 218
Saratoga Springs, New York 12866
Attorneys for Petitioner

**OFFICE OF THE NEW YORK**                **PAUL M. TARR, AAG**
**STATE ATTORNEY GENERAL**
120 Broadway
New York, New York 10271
Attorneys for Respondents

**SCULLIN, Senior Judge**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Petitioner Jurgis Paliulis seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 from

his 2005 conviction in Saratoga County Court for first-degree sexual abuse on the grounds that

(1) his guilty plea was involuntary; (2) counsel was ineffective; and (3) his sentence is harsh and

excessive. *See* Dkt. No. 9, Amended Petition for a Writ of Habeas Corpus to Vacate, Set Aside

or Correct Sentence Pursuant to 28 U.S.C. § 2254 ("Memorandum") at 4-23; Dkt. No. 9, Petition

Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by Person in State Custody ("Amended

Petition") at 6-10.

## II. RELEVANT BACKGROUND

On January 17, 2005, Petitioner was arrested and charged with first-degree criminal

sexual act stemming from engaging in oral sexual contact with a nine-year-old boy when

Petitioner was sixteen years old. *See* Dkt. No. 9, Memorandum at 2, 4; Dkt. No. 20, Exhibit "A,"

Affidavit in Support of Motion to Vacate ("Petitioner's Affidavit"), at ¶6; Exhibit "B," People's

Affirmation in Opposition [to Petitioner's motion to vacate his sentence], at ¶¶ 5-7; Dkt. No. 21,

Respondents' Memorandum of Law ("Respondents' Memorandum"), at 2.  In March 2005,

Petitioner's original attorney, Peter L. Coseo, began to negotiate a plea agreement.  Under its

terms, Petitioner would enter a guilty plea to first-degree sexual abuse in exchange for a ten-year

term of probation with the possibility that Petitioner would be granted youthful offender status.[1]

*See* Transcript of Hearing on Petitioner's motion to vacate his sentence pursuant to New York

---

[1] Under New York Law, an individual between the ages of sixteen (16) and nineteen (19) charged with committing a crime (except for certain felonies) and who has not been previously convicted of a felony or adjudged a youthful offender is eligible for youthful offender status.  *See* N.Y. Crim. Proc. Law § 720.10(1), (2).  Section 720.20 governs the procedure for determining whether a defendant is entitled to youthful offender status.  If the sentencing court determines that an eligible youth is a youthful offender, his or her conviction must be "vacated and replaced by a youthful offender finding; and the court must sentence the defendant pursuant to section 60.02 of the penal law."  N.Y. Crim. Proc. Law § 720.20(3).  "A youthful offender adjudication is not a judgment of conviction for a crime or any other offense [.]"  N.Y. Crim. Proc. Law § 720.35(1).

Criminal Procedure Law ("CPL") § 440.20, dated January 29, 2007 ("Motion Tr."), at 4-6.

Attorney Margaret Vella was retained to represent Petitioner in March 2005, and continued to

negotiate the terms of the plea agreement.  *See* Motion Tr. at 80-81.

On August 1, 2005, Petitioner was arraigned on a Superior Court Information charging

him with first-degree sexual abuse.  *See* Dkt. No. 20, Exhibit "B," at ¶ 7; Motion Tr. at 85.   In

August 2005,[2] Petitioner met with a Saratoga County probation officer and a pre-plea

investigation report was prepared.  *See* Motion Tr. at 26.  Although the report was generally

favorable to Petitioner, the probation officer recommended that the court deny Petitioner youthful

offender status because she did not think that Petitioner comprehended "the harmful effects of his

actions."  *See* Dkt. No. 20, Exhibit "A," Attorney Affirmation at ¶ 6; Motion Tr. at 28-29.

On September 26, 2005, the parties met with Saratoga County Court Judge Jerry J.

Scarano to review the pre-plea investigation report.  *See* Dkt. No. 20, Exhibit "B," at ¶ 8; Exhibit

"C," Decision and Order, Scarano, J. (Dec. 7, 2006), at 1; Motion Tr. at 28-29, 86-87.  The judge

indicated that, if Petitioner pled guilty to first-degree sexual abuse, it was "highly unlikely that

youthful offender status would be granted."  *See* Dkt. No. 20, Exhibit "C."  Counsel asked for an

adjournment in order for counsel and Petitioner to discuss further the options available to

Petitioner.  *See id*; Motion Tr. at 88-90.

On October 17, 2005, Petitioner pled guilty to first-degree sexual abuse in exchange for a

---

[2] It is unclear when the pre-sentence interview took place.  During the motion hearing, Petitioner indicated that the interview took place on August 1, 2005.  *See* Motion Tr. at 26.  In their affidavits in support of Petitioner's motion to vacate his conviction, Petitioner and his then-attorney, Stacey L. Gorman, indicated that Petitioner met with the probation officer on August 18, 2005.  *See* Dkt. No. 20, Exhibit "A," Petitioner's Affidavit at ¶ 6; Exhibit "A," Attorney Affirmation in Support of Motion to Vacate Sentence ("Attorney Affirmation") at ¶ 3.

ten-year term of probation, a waiver of appeal, and a classification as a Level 1 sex offender for purposes of New York's Sex Offender Registration Act.[3]  *See* Transcript of Plea ("Plea Tr.") at 2-3.  The court also agreed to grant Petitioner a Certificate of Relief from Civil Disabilities.  *See id.* at 5-6.  Since the pre-sentence investigation was already prepared, the court sentenced Petitioner the same day.  *See id.* at 2-3, 9.  Petitioner and his attorney asked the court to consider granting Petitioner youthful offender status.  *See id.* at 8-9, 15-16.  The court declined to grant youthful offender status and sentenced Petitioner to the agreed-upon sentence.  *See id.* at 17-18.

On November 2, 2006, Petitioner filed a motion to vacate his conviction pursuant to CPL § 440.20 on the ground that the court should have granted him youthful offender status.  *See* Dkt. No. 20, Exhibit "A."  In his affidavit in support of the motion, Petitioner admitted his guilt and explained that he was remorseful for his crime.  *See id.,* Petitioner's Affidavit at ¶ 7.  He also outlined the effect that registering as a sex offender had on his ability to attend college.  *See id.* at ¶¶ 10-18.  Petitioner's attorney affirmed that, although Petitioner was not promised youthful offender status, Petitioner believed that, as part of the plea agreement, the prosecutor would not oppose youthful offender status if the court was inclined to grant it.  *See* Dkt. No. 20, Exhibit "A," Attorney Affirmation, at ¶¶ 11, 17.  Counsel also stated that Petitioner's probation officer was not "hopeful that [Petitioner] [would] be able to further his education and that all the benefits of rehabilitation [could not] be achieved given [Petitioner's] limited academic opportunities" due to his status as a registered sex offender.  *See id.* at ¶ 7.  Counsel also argued that the court should have granted Petitioner youthful offender status and asked the court to vacate Petitioner's sentence, order a new pre-sentence investigation, and re-sentence Petitioner.  *See id.* at ¶ 18.  The

---

[3] N.Y. Correct. Law § 168 *et seq.*

-4-

People opposed the motion.  *See* Dkt. No. 20, Exhibit "B."

On December 7, 2006, the sentencing court denied Petitioner's motion, rejecting his apparent argument that his sentence should be vacated due to a misrepresentation made to Petitioner about whether he would receive youthful offender status.  *See* Dkt. No. 20, Exhibit "C" at 1.  The court also noted that Petitioner would "likely become a more productive member of society if he was allowed to achieve a college education" but that, "given the People's opposition to the motion, and the court's finding that there had been no misrepresentations made prior to Petitioner's guilty plea, there was no basis to vacate the sentence under CPL § 440.20."  *See id.* at 2.

Petitioner's counsel moved for reconsideration of the denial of his section 440.20 motion based upon sworn affidavits that Petitioner's parents submitted.  *See* Dkt. No. 20, Exhibits "D," "E."  The sentencing court granted Petitioner's motion for reconsideration and held a hearing on the motion on January 29, 2007.  *See id.* at Exhibit "F;" Motion Tr. at 2-118.  Petitioner and his parents testified in support of Petitioner's motion.  *See* Motion Tr. at 4-77.  Attorney Margaret Vella testified for the People.  *See id.* at 78-117.  On January 31, 2007, the sentencing court again denied Petitioner's motion, finding that Petitioner and his parents were "fully informed on the unlikelihood of Youthful Offender status prior to the plea."  *See* Dkt. No. 20, Exhibit "G" at 1. The court concluded that Petitioner's conviction was not obtained under duress or by fraud or misrepresentation and that there had been no violation of Petitioner's state or federal constitutional rights.  *See id.*

Petitioner sought permission to appeal the denial of his section 440.20 motion in the Appellate Division, Third Department, arguing (1) that his plea was invalid because he was

denied youthful offender status in violation of the terms of the plea agreement and (2) that

counsel failed to discuss Petitioner's options with him fully, failed to discuss possible defenses,

and failed to meet with him sufficiently prior to the plea.  *See* Dkt. No. 20, Exhibit "H" at 7-12.

The Appellate Division denied leave to appeal on July 31, 2007.  *See* Dkt. No. 20, Exhibit "I."

Petitioner's original application for a writ of habeas corpus, dated November 21, 2008,

was received for filing in this Court on November 28, 2008.  *See* Dkt. No. 1.  In a Memorandum-

Decision and Order dated December 8, 2008, the Court directed Petitioner to file an amended

petition in which he stated why the Court should not dismiss his petition as time-barred under the

AEDPA's one-year statute of limitations period.  *See* Dkt. No. 2 at 6.  The Court also directed

Petitioner to name the proper respondent(s) in any amended petition that he filed with this Court.

*See id.* at 5 n.3.[4]

On March 6, 2009, Petitioner filed an amended petition and an accompanying

memorandum of law that was dated February 27, 2009.  *See* Dkt. No. 6.  The amended petition

only partially complied with the Court's December 8, 2008 Memorandum-Decision and Order.

Petitioner stated his reasons in support of his request that the Court equitably toll the statute of

limitations, but he did not name the proper respondent(s) as the Court's December 8, 2008

Memorandum-Decision and Order required.  *See* Dkt. No. 6, Memorandum of Law, at ¶ 5; Dkt.

No. 7 at 4-5.  In a Memorandum-Decision and Order dated March 17, 2009, the Court directed

---

[4] In a letter motion dated February 10, 2009, Petitioner's counsel asked for an extension of
time in which to respond to the Court's December 8, 2008 Memorandum-Decision and Order.  *See*
Dkt. No. 3.  The Court granted an extension until February 25, 2009.  *See* Dkt. No. 4.
On March 5, 2009, the Court dismissed Petitioner's habeas petition because he had not filed an
amended petition.  *See* Dkt. No. 5.  On March 13, 2009, after Petitioner filed his amended petition,
the Court reopened this action.  *See* Text Order dated March 13, 2009.

Petitioner to submit an amended petition that fully complied with the Court's December 8, 2008 Memorandum-Decision and Order. *See* Dkt. No. 7. Petitioner submitted a complete amended petition on April 13, 2009. *See* Dkt. No. 9.

The Court declined to dismiss the amended petition as time-barred at that time and directed a response to the petition. *See* Dkt. No. 10. On October 23, 2009, the Office of the Attorney General for the State of New York, acting on behalf of Respondents, filed a response and memorandum of law in opposition to the petition, along with the relevant state-court records. *See* Dkt. Nos. 19-21.

## II. DISCUSSION

**A.     Timeliness**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a one-year statute of limitations for prisoners to seek federal review of their state-court criminal convictions. *See* 28 U.S.C. § 2244(d)(1). The one-year period generally begins to run from the date on which the state criminal conviction became final by the conclusion of direct review or by the expiration of the time to seek direct review. *See* 28 U.S.C. § 2244(d)(1)(A).[5] For purposes of section 2244, a state conviction becomes "final" when the United States Supreme Court denies an application for a writ of certiorari or when the time to seek certiorari has expired, which is ninety

---

[5] Other dates from which the limitations period may start running are the date on which an unconstitutional, state-created impediment to filing a habeas petition is removed, the date on which the Supreme Court initially recognized the constitutional right on which the petitioner bases his habeas application if that right was newly recognized and made retroactively applicable, or the date on which the petitioner could have discovered the factual predicate for the claim or claims presented through the exercise of due diligence (newly discovered evidence). *See* 28 U.S.C. § 2244(d)(1)(B), (C), and (D). None of the alternative dates apply in this case.

days after the date on which the highest court in the state has completed direct review of the case. *See Saunders v. Senkowski*, 587 F.3d 543, 548-49 (2d Cir. 2009); *Williams v. Artuz,* 237 F.3d 147, 151 (2d Cir. 2001).

In this case, Petitioner was sentenced on October 17, 2005, and did not directly appeal his conviction.  His conviction therefore became "final" for purposes of the AEDPA on November 16, 2005, when the thirty days in which he could have sought appellate review of his conviction in state court expired.  *See Bethea v. Girdich,* 293 F.3d 577, 578 (2d Cir. 2002) (holding that the one-year statute of limitations began to run when the petitioner's time for filing a notice of appeal from the judgment of conviction expired); *Vaughan v. Lape*, No. 9:05-CV-1323, 2007 WL 2042471, *4 (N.D.N.Y. July 12, 2007) ("In New York, a defendant has thirty days after the 'imposition of the sentence' to notify the court that he will appeal.  N.Y. C.P.L. § 460.10(1)(a).").  Petitioner, therefore, had until November 16, 2006, to file a timely petition.  He filed his petition on **November 28, 2008**, more than two years after the expiration of the statute of limitations under 28 U.S.C. § 2244(d)(1)(A).[6]

### 1. Statutory tolling

The one-year limitations period under the AEDPA is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending[.]"  28 U.S.C. § 2244(d)(2); *see Saunders*, 587 F.3d at 548.  The

---

[6] Petitioner does not allege any basis for the application of 28 U.S.C. § 2244(d)(1)(B)-(D).  He does not claim that there was a date on which a "state created impediment" to filing his petition was lifted; that there is a retroactively applicable new constitutional right; or that there is newly discovered evidence.  Therefore, none of the bases for a later date upon which the statute of limitations could have begun to run apply in this case.

tolling provision "'excludes time during which properly filed state relief applications are pending,' but it does not restart the statute of limitations clock." *Williams v. Breslin*, No. 03 Civ. 1848, 2004 WL 242447, *2 (S.D.N.Y. Feb. 11, 2004) (quoting *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000)).  The tolling provision excludes from the limitations period only the time that the state-relief application remained undecided, including the time during which an appeal from the denial of the motion was taken.  *See Saunders*, 587 F.3d at 548; *Smith v. McGinnis,* 208 F.2d 13, 16 (2d Cir. 2000); *Bennett v. Artuz*, 199 F.3d 116, 120-21 (2d Cir. 1999), *aff'd*, 531 U.S. 4 (2000).

Petitioner filed a section 440.20 motion to vacate his sentence in this case on November 2, 2006.  *See* Dkt. No. 20, Exhibit "A," Notice of Motion.  At that point, 351 days of the one-year statute of limitations had run, leaving fourteen (14) days remaining.  The motion remained pending until the Appellate Division denied leave to appeal the sentencing court's denial of the motion on July 31, 2007.  *See id.* at Exhibit "I."  Therefore, the statute of limitations was tolled between November 2, 2006, and July 31, 2007.  *See* Dkt. No. 20, Exhibit "I;" *Smith*, 208 F.3d at 16.  The limitations period began to run again on August 1, 2007, and expired fourteen (14) days later, on August 15, 2007.  As noted, Petitioner filed this petition on November 28, 2008, well after the limitations period expired.

### 2. Equitable tolling

The AEDPA does not provide that a court may toll the statute of limitations for any reason other than the pendency of a state post-conviction motion, and the Supreme Court has not yet decided whether equitable tolling applies to section 2244(d).  *See Lawrence v. Florida*, 549

U.S. 327, 337 (2007).  The Second Circuit has ruled, however, that in "'rare and exceptional circumstances,'" the court may equitably toll the limitations period.  *Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir. 2004) (quoting *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000)).

To qualify for equitable tolling, a petitioner must show that (1) extraordinary circumstances prevented him from timely filing his petition and (2) that he has been pursuing his rights diligently throughout the period he seeks to toll.  *See Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) (citation omitted); *Diaz v. Kelly*, 515 F.3d 149, 153 (2d Cir.), *cert. denied*, 129 S. Ct. 168 (2008) (quotation and other citation omitted).  The Second Circuit has established only a limited number of circumstances that may merit equitable tolling, e.g., where an attorney's conduct is so outrageous and incompetent that it is truly extraordinary, *see Doe*, 391 F.3d at 159 (citation omitted); *Baldayaque v. United States*, 338 F.3d 145, 152-53 (2d Cir. 2003), or where prison officials intentionally obstruct a petitioner's ability to file his petition by confiscating his legal papers, *see Valverde v. Stinson*, 224 F.3d 129, 133 (2d Cir. 2000).  The Second Circuit has also equitably tolled the period between the issuance of a state-court order and its receipt by the petitioner in cases where the state court failed to send prompt notice and the petitioner made a reasonably prompt inquiry.  *See Diaz*, 515 F.3d at 155 (six months elapsed before court sent notice of the order).  Although the Circuit has not ruled on the issue of whether "'various constitutional provisions require that a court toll the AEDPA's limitations period for actual innocence,'" a credible showing of actual innocence, based upon new reliable evidence that was not presented at trial and that makes it "'more likely than not that no reasonable juror would have found [the] petitioner guilty beyond a reasonable doubt'" may also constitute an extraordinary circumstance warranting equitable tolling.  *Doe*, 391 F.3d at 160-62 (quoting *Schlup*, 513 U.S. at

324, 327); *Whitley v. Senkowski*, 317 F.3d 223, 225 (2d Cir. 2003).

A petitioner must also "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *Valverde*, 224 F.3d at 134 (citations omitted). If a petitioner did not exercise reasonable diligence after the extraordinary circumstance began, "the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing." *Baldayaque*, 338 F.3d at 150 (quoting *Hizbullahankhamon v. Walker*, 255 F.3d 65, 75 (2d Cir. 2001), *cert. denied*, 536 U.S. 925, 122 S. Ct. 2593, 153 L. Ed. 2d 782 (2002)); *see Mason v. Pool*, 554 F. Supp. 2d 391, 397-98 (W.D.N.Y. 2008). Beginning on the date the extraordinary circumstance occurred, the one-year limitations period is tolled between (1) the date on which filing ordinarily would have been required under the applicable limitations period and (2) the earliest date after the extraordinary circumstance occurred that petitioner, acting with reasonable diligence, should have filed his or her petition. *See Valverde*, 224 F.3d at 134 (footnote omitted).

Petitioner alleges two "extraordinary circumstances" that prevented him from filing his petition on time: (1) his father was ill and he had difficulties raising the money needed to hire an attorney; and (2) he was unaware of the AEDPA's time limitations on habeas petitions. *See* Dkt. No. 9, Amended Petition at 14, Memorandum at 3-4. Petitioner also states that he "diligently pursued his rights to the best of his ability." *See* Memorandum at 3. The Court finds that Petitioner's claims are insufficient to warrant equitable tolling.

-11-

A petitioner's illness can constitute an extraordinary circumstance for the purposes of equitable tolling.  *See Harper v. Ercole,* No. 08-CV-3442, 2009 WL 4893196, *4 (E.D.N.Y. Dec. 16, 2009) (presuming that a petitioner's hospitalization while undergoing surgery, which produced life-threatening complications, constituted an extraordinary circumstance); *Adkins v. Warden*, 585 F. Supp. 2d 286, 302 (D. Conn. 2008) (noting that "a showing of mental incapacity would likely satisfy the two-prong standard for equitable tolling" (citation omitted)); *Jean-Louis v. Greiner*, No. 02 Civ. 6326, 2003 WL 1807144, *3 (S.D.N.Y. Apr. 4, 2003) (noting that, "[i]n certain situations, courts have found that illness or incompetence may toll the statute of limitations" (citations omitted)).  However, if a petitioner establishes the existence of a mental illness or condition, but fails "to provide a sufficient explanation as to why this illness or condition prevented him from pursuing his legal rights despite his due diligence, courts have consistently refused to toll the applicable statute of limitations."  *Stephenson v. Ercole*, No. 07-CV-3677, 2009 WL 3872358, *4 (E.D.N.Y. Nov. 17, 2009) (citations omitted); *see, e.g.*, *Rhodes v. Senkowski*, 82 F. Supp. 2d 160, 169-70 (S.D.N.Y. 2000) (holding that the fact that the petitioner was hospitalized three times while he suffered from "extreme headaches, depression, hypertension, weight loss, a fungal infection and 'atypical chest disorder'" was insufficient to toll the one-year limitations period because he did not show that these "medical problems rendered him unable to pursue his legal rights during the relevant time period").

In this case, Petitioner has not explained why his father's illness prevented him from timely filing his petition.  Moreover, the Court has not found, nor does Petitioner cite, any authority for the proposition that a petitioner's family member's illness could constitute an extraordinary circumstance warranting equitable tolling.

-12-

To the extent that Petitioner's claim is that, because his father was ill, Petitioner had difficulty obtaining the funds for an attorney, that claim also does not warrant equitable tolling. Petitioner is not entitled to an attorney to assist him in filing a collateral attack on his conviction. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("We have never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions, . . . and we decline to so hold today." (internal citation omitted)).  Moreover, the fact that Petitioner was proceeding *pro se* also "does not in itself constitute an extraordinary circumstance meriting tolling[.]"  *Doe*, 391 F.3d at 175 (citation omitted); *see Francis v. Miller*, 198 F. Supp. 2d 232, 235 (E.D.N.Y. 2002) (concluding that ignorance of the law and legal procedure and a claim that petitioner lacked funds to hire an attorney are not extraordinary circumstances warranting equitable tolling); *Wilson v. Bennett*, 188 F. Supp. 2d 347, 354 (S.D.N.Y. 2002) (stating that, although "Wilson may have believed that he needed legal assistance in filing his petition, courts have . . . held that a lack of legal knowledge cannot excuse a delay in filing a petition" (citations omitted)).

Furthermore, although Petitioner states that he was unaware of the one-year statute of limitations, ignorance of the law does not warrant tolling because *pro se* petitioners "bear[] the burden of learning the applicable procedural rules in federal court and abiding by them when seeking review."  *Hill v. Superintendent, Gowanda Corr. Facility*, No. 08-CV-4508, 2009 WL 560690, *3 (E.D.N.Y. Mar. 4, 2009); *Worsham v. West*, No. 05 Civ. 530, 2006 WL 2462626, *2 (S.D.N.Y. Aug. 23, 2006) (stating that "[m]ere ignorance of the law does not qualify as an extraordinary circumstance warranting equitable tolling in habeas cases" (citations omitted)); *Corrigan v. Barbery*, 371 F. Supp. 2d 325, 330 (W.D.N.Y. 2005) (holding that "simple ignorance

of the applicable rules does not excuse a petitioner's failure to file a timely petition" (citation omitted)); *Brown v. Superintendent, Elmira Corr. Facility*, No. 97 Civ. 3303, 1998 WL 75686, *4 (S.D.N.Y. Feb. 23, 1998) (stating that "a self-serving statement that the litigant is ignorant of the law is not grounds for equitable tolling of a statute of limitations" (citation omitted)).

It is also worth noting that Petitioner was above the age of majority when the court denied him leave to appeal the denial of his section 440.20 motion on July 31, 2007, and when he ultimately filed his federal habeas petition. *See* Dkt. No. 20, Exhibit "A," Petitioner's Affidavit at ¶ 2 (indicating Petitioner's date of birth is September 4, 1988). Thus, Petitioner's age is not an extraordinary circumstance. *See Hill,* 2009 WL 560690, at *2 (noting that the petitioner failed to explain how his youth at the time of the conviction affected his ability to understand legal procedures or to demonstrate that he acted with diligence during the period of time he sought to toll); *Lewis v. Walsh*, No. 03 Civ. 1932(DC), 2003 WL 21729840, *2 (S.D.N.Y. July 25, 2003) (finding that a petitioner who was above the age of majority during the statute-of-limitations period did not presented extraordinary circumstances that would justify equitable tolling).

Finally, Petitioner makes no assertion of actual innocence. In fact, he entered a guilty plea to first-degree sexual abuse and admitted that he had subjected the victim, who was under age eleven, to sexual contact. *See* Plea Tr. at 8-9. Petitioner has also candidly admitted, in state post-conviction proceedings, that he committed the crime for which he pled guilty. *See* Dkt. No. 20, Exhibit "A," Petitioner's Affidavit, at ¶ 7. Since there is no credible claim of actual innocence based upon new, reliable evidence before this Court, it need not determine whether actual innocence may toll the statute of limitations in this case. *See Doe,* 391 F.3d at 161; *Whitley,* 317 F.3d at 225.

In sum, Petitioner has failed to demonstrate any extraordinary circumstances and reasonable diligence that would warrant the Court's equitable tolling of the AEDPA's limitations period.

## III. CONCLUSION

After carefully reviewing Petitioner's submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the amended petition is **DISMISSED as untimely**; and the Court further

**ORDERS** that no Certificate of Appealability ("COA") shall issue because Petitioner has failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2) requires;[7] and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: May 2, 2010
       Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge

---

[7] *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (holding that "§ 2253 permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right'"); *Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that, if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation" (citation omitted))